UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

POLARIS EXPERIENCE, LLC
d/b/a POLARIS ADVENTURES

      Plaintiff,

v.                                                              CASE NO.

GREATER NORTH SERVICES, LLC
d/b/a GREATER NORTH POWER SPORTS
AND RENTALS, and
VICTOR CAMINATA

      Defendants.
_____

## POLARIS EXPERIENCE, LLC's ORIGINAL COMPLAINT

Defendants—former Polaris Outfitters—have seized 61 Polaris snowmobiles and pontoon boats, are impermissibly renting those vehicles, and claim to be an approved Polaris Outfitter. And now, Defendants refuse to return the Polaris vehicles by holding them hostage unless Polaris pays Defendants a substantial sum of money. Defendants have created fraudulent invoices for storage and labor, neither of which was contracted for. Despite Polaris' repeat demands for Defendants to cease their improper conduct and return the vehicles, they refuse. Polaris' sole option is to seek emergency relief from the Court and an order compelling Defendants to return Polaris' vehicles and enjoin them from holding themselves out as Polaris Outfitters.

**The Parties**

1. Polaris Experience LLC is a Minnesota limited liability company. Polaris Experience LLC's sole member is Polaris Sales Inc., which is a Minnesota corporation with its principal place of business in Minnesota.

2. Greater North Services, LLC d/b/a Greater North Power Sports & Rentals is a Michigan based limited liability company, and its managing member is Victor Caminata.

3. Defendant Victor Caminata is an individual who resides in Wexford County, Michigan and is the owner and operator of Greater North Services, LLC d/b/a Greater North Power Sports & Rentals. He is a citizen of Michigan.

**Jurisdiction and Venue**

4. The Court has jurisdiction over this action because the parties maintain diversity of citizenship, and the amount in controversy exceeds $75,000 pursuant to 28 U.S.C. § 1332. As alleged above, Polaris is a citizen of Minnesota, while Defendants are citizens of Michigan.

5. Additionally, the Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367. Polaris alleges violations of the Lanham Act. Since this claim is brought under federal law, the Court has federal question jurisdiction over them pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Polaris' remaining state law claims pursuant to 28 U.S.C. § 1367.

6. Venue is proper in this Court because the underlying contracts provide that venue is appropriate in the federal courts of the United States or the courts of the State of Minnesota in each case located in Minneapolis or Hennepin County and each contracting

party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action, or proceeding. Since the claims and parties are inextricably intertwined, venue is proper in this Court for all parties.

## Facts

**A. Greater North Services and Caminata Agree to Rent Polaris' Vehicles Under the Polaris Adventures Program.**

7. Under the Polaris Adventures Program, Polaris allows third-party Outfitters, like Greater North Services, LLC d/b/a Greater North Power Sports & Rentals ("Greater North Rentals"), to rent Polaris' vehicles, including snowmobiles and pontoon boats, throughout the United States.



8. In 2024, Greater North Rentals agreed to participate in the Adventures Program under the Polaris Adventure Rentals (PAR) and Polaris Adventures Select (PAS) options.

3

9. Victor Caminata is the managing member who owns and controls Greater North Rentals.

10. On February 13, 2024, Victor Caminata on behalf of Greater North Rentals entered into a Premium Program Services Agreement ("2024 Agreement"). (Exhibit A).

11. Pursuant to the 2024 Agreement, Polaris provided a limited, non-exclusive, non-transferable, and non-assignable license to use program branding if certain requirements were met. (Exhibit A – Section 3, B, ii).

12. Polaris also provided Greater North Rentals fifty-six snowmobiles (56) and (5) (the "Vehicles") pontoon boats for use, which are identified by Vehicle Identification Number ("VIN") below.

| | |
|---|---|
| 1. SN1TDE6R3RC206863 | 32. SN1TDE6R2RC206580 |
| 2. SN1TDE6R0RC206867 | 33. SN1TDE6R4RC206578 |
| 3. SN1TDE6RXRC206861 | 34. SN1TDE6R1RC206554 |
| 4. SN1TDE6RXRC206875 | 35. SN1TDE6R6RC206579 |
| 5. SN1TDE6R7RC206865 | 36. SN1TDE6R2RC207325 |
| 6. SN1TDE6R2RC206871 | 37. SN1TDE6R9RC207306 |
| 7. SN1TDE6RXRC206844 | 38. SN1TDE6RXRC207329 |
| 8. SN1TDE6R5RC206864 | 39. SN1TDE6R0RC207324 |
| 9. SN1TDE6R6RC206873 | 40. SN1TDE6R5RC207321 |
| 10. SN1TDE6R0RC206870 | 41. SN1TDE6R1RC206778 |
| 11. SN1TDE6R1RC206876 | 42. SN1TDE6R0RC207310 |
| 12. SN1TDE6R7RC206879 | 43. SN1TDE6R0RC206917 |
| 13. SN1TDE6R7RC206882 | 44. SN1TDE6R6RC207330 |
| 14. SN1TDE6R4RC206872 | 45. SN1TDE6R6RC207313 |
| 15. SN1TDE6R5RC206881 | 46. SN1TDE6R5RC207318 |
| 16. SN1TDE6R0RC206884 | 47. SN1TDE6RXRC206777 |
| 17. SN1TDE6RXRC206830 | 48. SN1TDE6R3RC207334 |
| 18. SN1TDE6R3RC206877 | 49. SN1TDE6R1RC207302 |
| 19. SN1TDE6R3RC206880 | 50. SN1TDE6R7RC207322 |
| 20. SN1TDE9F7RC230861 | 51. SN1TDE6R3RC207320 |
| 21. SN1TDE9F5RC230860 | 52. SN1TDE6R2RC206918 |
| 22. SN1TDE9F8RC230853 | 53. SN1TDE6R4RC206919 |
| 23. SN1TDE9F7RC230858 | 54. SN1TDE6R0RC206920 |

| | |
|---|---|
| 24. SN1TDE9F5RC230857<br>25. SN1TDE9F9RC230859<br>26. SN1TDE6R7RC206574<br>27. SN1TDE6R6RC206582<br>28. SN1TDE6R1RC206537<br>29. SN1TDE6R2RC206577<br>30. SN1TDE6R9RC206575<br>31. SN1TDE6R4RC206581 | 55. SN1TDE6R5RC207304<br>56. SN1TDE6R1RC206750<br>57. GDY77739D424<br>58. GDY77742D424<br>59. GDY77741D424<br>60. GDY77740D424<br>61. GDY77759D424 |

13. To use the Vehicles, Greater North Rentals and Victor Caminata promised, among other obligations, the following:

    a. Sole Use: The Defendants were required to utilize the Vehicles solely for the Adventures Program. (Exhibit A – Section 3, A, iii, a).

    b. Safety: As part of the limited use, the 2024 Agreement required the Defendants to provide renter safety gear, to abide by all safety warnings, labels, instructions, and manuals provided by Polaris, and to show renters safety videos. (*See* Exhibits A – Section 2, I, ii and iii; Section 3, A, i.(e). The Defendants were required to maintain the safety and security of all vehicles. (Exhibit A – Section 3, A, iii, j).

    c. Return: The Defendants were required to surrender the Vehicles at the end of the applicable Term. (Exhibit A – Section 3, A, iii, j).

    d. Payment: Payments under the 2024 Agreement were due on the 15th of each month. (Exhibit A – Section 3, C, i).

**B. Polaris Terminates the 2024 Agreement after Defendants Materially Breach.**

14. Defendants first breached the 2024 Agreement by failing to pay all sums owed and ignored Polaris' invoices. (Exhibit B).

15. Polaris made several attempts to discuss Greater North Rentals' and Victor Caminata's delinquency, but Defendants refused to cooperate.

16. On March 31, 2025, Polaris sent a letter to Greater North Rentals terminating the February 13, 2024, Agreement. (Exhibit C). Polaris asked for prompt payment of all

5

outstanding invoices, that Greater North Rentals and Victor Caminata make the Vehicles available for return, and that Greater North Rentals and Victor Caminata return all Polaris' hardware. (Exhibit C).

17. Polaris reminded Greater North Rentals of the following contractual duties, obligations, and responsibilities:

> Notwithstanding the termination of the Agreement, Participant is reminded of the following contractual duties, obligations, and responsibilities:
>
> - Prompt payment of all outstanding invoices for Business Services and Rental Financing utilized through the Termination Date. There is currently an outstanding balance of $130,897.09 in Program Fees and $23,044.91 in PG&A, for a total amount owed of $153,942.00.
> - Vehicles available for return no later than May 30, 2025, and in accordance with Program guidelines for Vehicle Return Conditions and Acceptable Wear.
> - Return of all Polaris-owned hardware including iPads, tablets, PLB devices, and associated components by no later than May 30, 2025.
>
> Our hope is that we can conduct a fair, friendly, and efficient wind down. It has been a pleasure working with you, and we wish you the best of luck in the future. If you have questions or concerns, including the content of this letter, please contact Josh Grube, Risk Manager, at joshua.grube@polaris.com or (763) 847-8203.

18. Rather than facilitating the timely return or collection of the Vehicles, Defendants retain possession by fabricating storage and labor expenses and holding the Vehicles hostage.

**C. Defendants Continue to Use and Refuse to Return the Vehicles.**

19. Despite Polaris' demand to return the Vehicles and discontinue the use of any trademarks, as required in the 2024 Agreement, Defendants instead rent the Vehicles, use Polaris' trademarks, and otherwise fail to abide by their contractual duties.

20. In fact, Defendants continue to market and rent the Vehicles for the upcoming winter season despite the termination of the 2024 Agreement in March.



21. Defendants continue to use Polaris' trademark on their websites, waiver form, and safety videos including the "Polaris Adventures" mark, despite Polaris revoking all authorized use of such branding and trademarks. The "Polaris Adventures" mark appears on Greater North Rental's websites.

7





22.     To date, the Defendants owe more than $150,000.00 in unpaid fees under the 2024 Agreement, and they continue to rent out the Vehicles and use Polaris' trademark to market to potential customers in direct violation of both the 2024 Agreement, Polaris' property rights, and the law. (Exhibit B; Exhibit C).

8

23. Defendants are not only continuing to rent the Vehicles wrongfully but are also doing so at unauthorized locations. The 2024 Agreement requires Defendants to conduct vehicle rentals from the Participant's outfitter operations location in Cadillac, Michigan. (Exhibit A – Section 3, A, i, a, and the Preamble).

24. Defendants are currently renting the Vehicles in Traverse City, Michigan outside the Participant's outfitter operations location.



9



**D. Greater North Rentals is Victor Caminata's Alter Ego.**

25. Victor Caminata is the managing member of Greater North Rentals responsible for Greater North Rentals' finances and business practices including converting the Vehicles for his own personal use and benefit.

26. Victor Caminata personally signed the 2024 Agreement as the participant and listed his individual name as the participant. (Exhibit A – p. 23).

27. Victor Caminata continues to rent out and personally use the Vehicles without Polaris' permission. In doing so, Victor Caminata is intentionally exercising an ownership right that is inconsistent with Polaris' ownership rights.

28. Victor Caminata treats Greater North Rentals money as his own and uses the Vehicles for his own personal enjoyment.

29. Victor Caminata failed to observe the corporate form and is not insulated from personal liability. Victor Caminata used his dominant control to convert the Vehicles

from Polaris to himself by continuing to use and rent out the Vehicles for his own personal benefit after the 2024 Agreement was terminated.

30. Upon information and belief, Victor Caminata intermingles his personal and corporate funds and treats the Vehicles and boats as his own.

31. Victor Caminata exploited the company structure to take Polaris' property and tried to extort money from Polaris. By not returning the Vehicles, he continues to deprive Polaris of its rightful ownership.

32. Victor Caminata has a history of misuse of items that do not belong to him. He previously pleaded guilty of two charges of fraudulent use of funds and pleaded no contest to larceny by conversion according to Osceola County Court records.

### E. Defendants Attempt to Extort $234,805 from Polaris by Holding Polaris' Vehicles Hostage Until Polaris Pays.

33. Again, on June October 20, 2025, Polaris demanded, among other things, that Defendants immediately cease and desist operating the Vehicles or allowing third parties to operate the Vehicles. (Exhibit D).

34. Polaris requested Defendants coordinate the return of Polaris 61 snowmobiles and pontoon boats. (Exhibit D). However, Defendants refuse to cooperate in coordinating the return of the Vehicles by dodging phone calls, voicemails, and holding the Vehicles hostage unless Polaris pays Defendants a large sum of money. (Exhibit E).

35. Victor eventually responded to Polaris by forwarding a letter drafted by a disgraced attorney Michael Loprieno seeking to extort $234,805.00 from Polaris before returning the Vehicles. (Exhibit E; Exhibit F). Micheal Loprieno appears to be

11

unauthorized to practice law for fabricating and forging legal documents according to the State Bar of Illinois.

| Full Licensed Name | Michael Leonard Loprieno |
|---|---|
| Registered Address | Michael Loprieno, Esquire<br>12002 Duggan Road<br>Central Point, Oregon 97502 |
| Registered Phone | (630) 947-5346 |
| Registered Email | Not available |
| Date Admitted | December 01, 2010 |
| Illinois Registration Status | Not authorized to practice law due to discipline – Last Registered Year: 2021 |
| Case Summary | Mr. Loprieno, who was licensed in 2010, was suspended for one year and until further order of the Court. In 2018, Mr. Loprieno fabricated documents that purported to show that another attorney had prepared documents that would have changed the terms of Mr. Loprieno's grandmother's estate plan, then falsely denied creating those documents in his initial response to the ARDC's request for information. A suspension until further order of the Court is an indefinite suspension which requires the suspended lawyer to petition for reinstatement after the fixed period of suspension ends. Reinstatement is not automatic and must be allowed by the Supreme Court of Illinois following a hearing before the ARDC Hearing Board. |
| Case Summary | Mr. Loprieno, who was licensed in 2010, was suspended for five months. He forged two documents in connection with obtaining a $25,000 loan for his family's finance company. The suspension is effective on October 11, 2018. |

36.     Defendants have indicated through written correspondence and a telephone conversation with Polaris' counsel that they intend to hold Polaris' property hostage until Polaris remits a significant payment. (See Exhibit E; Exhibit F). Polaris declines to engage in the attempted extortion under these circumstances and proceeds to file this complaint instead.

37.     Time is of the essence because the winter rental season is here, and the Defendants show no sign of abiding by the 2024 contract terms. Rather than respecting

12

Polaris' ownership rights, the Defendants are attempting to extort Polaris and persist in transferring ownership to themselves by continuing to rent out the Vehicles.

## COUNT I – BREACH OF CONTRACT
### (against Greater North Rentals and Victor Caminata)

38. Polaris realleges paragraphs 1-37 as if fully set forth herein.

39. Greater North Rentals and Victor Caminata are parties to the 2024 Agreement with Polaris. (*See* Exhibit A at p. 1 and 23).

40. The 2024 Agreement required that the Vehicles be used solely for the Adventures Program. (Exhibit A – Section 3, A, iii, a). The Defendants were also required to maintain the safety and security of all the Vehicles. (Exhibit A – Section 3, A, iii, j).

41. Greater North Rentals and Victor Caminata breached the 2024 Agreement by failing to surrender the Vehicles to Polaris, by failing to maintain the safety and security of the Vehicles, by continuing their use of Polaris logos, trademarks, and videos, by continuing to use the Vehicles for a reason other than the Adventures Program, by renting the Vehicles outside the program location, and by continuing to rent the Vehicles without complying with the requirements of the 2024 Agreement.

42. Greater North Rentals and Victor Caminata also breached the 2024 Agreement by failing to pay more than $150,000 in unpaid fees, which only continue to grow due to their failure to pay.

43. Due to these breaches, Polaris has suffered damages and continues to suffer damages which are irreparable.

44. Polaris is entitled to pierce the corporate form because Victor Caminata used Greater North Services as a mere alter ego and instrumentality for Victor Caminata's own personal dealings to achieve an inequitable result against Polaris. Piercing the veil is necessary to avoid injustice or fundamental unfairness.

45. Polaris is entitled to pierce Greater North Rentals' veil under Minnesota Statutes § 322C.0304 which confirms that veil-piercing case law applicable to corporations also applies to LLCs.

46. Polaris is entitled to temporary, preliminary and permanent injunctive and equitable relief, including an order of specific performance requiring Greater North Rentals and Victor Caminata to stop renting, using, or otherwise moving the Vehicles and to return all the Vehicles to Polaris immediately.

47. Polaris is entitled to temporary, preliminary and permanent injunctive and equitable relief, including an order of specific performance requiring Greater North Rentals and Victor Caminata to stop renting, using, or otherwise moving the Vehicles and to return all the Vehicles to Polaris immediately.

48. Polaris is also seeking attorney fees as allowed by the 2024 Agreement. (*See* Exhibit A – Section 3, C, I, (b) ("the participant will be liable for the cost of collection including reasonable attorney's fees"); Exhibit A – Section 22).

## COUNT II – CONVERSION
### (against Greater North Rentals and Victor Caminata)

49. Polaris realleges paragraphs 1-48 as if fully set forth herein.

50. Polaris is the lawful, true owner of the Vehicles and has demanded that the Defendants return the Vehicles.

51. Greater North Rentals and Victor Caminata have refused to return the Vehicles, and in fact, have continued to rent out and personally use the Vehicles without Polaris' permission. In doing so, the Defendants are intentionally exercising an ownership right that is inconsistent with the true owner's rights through their continued actions despite knowledge of Polaris' ownership interest.

52. Defendants, by refusing to return the Vehicles, have deprived and continue to deprive Polaris of its interest in the Vehicles.

53. Polaris suffered and continues to suffer damages, including irreparable harm, because of the Defendants' conversion of Polaris' property, namely the Vehicles, including damages that are difficult to quantify. This includes, but is not limited to, depreciation of the Vehicles, general wear and tear, potential property damage, and interference with Polaris exclusive right to use the Vehicles in another capacity.

54. Polaris is entitled to temporary, preliminary and permanent injunctive and equitable relief, including an order of specific performance requiring Greater North Rentals and Victor Caminata to stop renting, using, or otherwise moving the Vehicles and to return all the Vehicles to Polaris immediately.

**COUNT III – TRADEMARK INFRINGEMENT – LANHAM ACT, 15 U.S.C. § 1051 et seq. (against Greater North Rentals and Victor Caminata)**

55. Polaris realleges paragraphs 1-54 as if fully set forth herein.

56. Under the 2024 Agreement, Greater North Rentals was granted a limited, revocable license to use Polaris' program branding in connection with the Adventures Program if certain conditions were met, but they were not granted a trademark license. In any event, the ability to use the trademarks expired at the same time the 2024 Agreement terminated, March 31, 2025, respectively.

57. Yet the Defendants unlawfully and illegally continue to use Polaris' marks on their public website. Greater North Rentals' website includes the "Polaris Adventures" mark, Polaris Adventures Safety Video, and "Arrival by Polaris Adventures" mark while continuing to advertise Polaris snowmobiles for rent.

58. By using Polaris' trademark, the Defendants sought and seek to deceive the general public by falsely portraying an affiliation with Polaris, sponsorship with Polaris, or approval of their services by Polaris.

59. The Defendants are profiting off Polaris' name through the use of its mark, Polaris Adventures.

60. The unauthorized use of Polaris' name and trademark is confusing to consumers and harms Polaris because the Defendants are benefiting from Polaris' reputation and goodwill without compensating Polaris.

61. Polaris is entitled to temporary, preliminary and permanent injunctive and equitable relief, including an order of specific requiring the Defendants to refrain from using Polaris' name and trademark and to immediately remove Polaris' trademark from the Defendants' websites.

## COUNT IV – UNJUST ENRICHMENT
### (against Greater North Rentals and Victor Caminata)

62. Polaris realleges paragraphs 1-61 as if fully set forth herein.

63. Polaris conferred a benefit on the Defendants through the Defendants' failure to return the Vehicles after the 2024 Agreement terminated.

64. The Defendants knew and appreciated that they were still in possession of the Vehicles and continued renting the Vehicles without Polaris' permission and after Polaris demanded the return of the Vehicles.

65. The Defendants were unjustly enriched through their continued use and renting of the Vehicles.

66. It would be inequitable for the Defendants to retain the benefits received from the continued use and rental of the Vehicles and should be ordered to pay Polaris for the continued use of the Vehicles.

## REQUEST FOR EMERGENCY TERMPORARY, PRELIMINARY, AND PERMANENT INJUNCTION
### (against Greater North Rentals and Victor Caminata)

67. Polaris realleges paragraphs 1-66 as if fully set forth herein.

68. Polaris seeks emergency temporary, preliminary, and permanent injunction against the Defendants based upon actions taken by the Defendants to deny Polaris access to the Vehicles as required by the 2024 Agreement and law, and the Defendants continued use of Polaris' trademarks, including its "Polaris Adventures" mark, Polaris Adventures Safety Video, and "Arrival by Polaris Adventures" mark on their website and Facebook pages.

69. The Defendants' actions irreparably harm Polaris because they open Polaris up to third party liability, interfere with Polaris' property rights by refusing to return the Vehicles, and infringe on Polaris' trademarks, among other things.

70. Based on the 2024 Agreement and the law, there is a substantial likelihood that Polaris will prevail in this action.

71. Polaris has no adequate remedy at law.

72. The balance of equities favors Polaris since without an injunction Polaris will suffer and continues to suffer injury while an injunction will not injure the Defendants.

73. Without the immediate issuance of an injunction, Polaris will continue to be harmed by the unauthorized and illegal use of the Vehicles by the Defendants, including renting the Vehicles to third party individuals, and by the unauthorized and illegal use of Polaris' trademarks.

74. A temporary restraining order and permanent injunction should be issued to prevent the Defendants from further use of the Vehicles, to direct the Defendants to release the Vehicles to Polaris, to order the Defendants to keep the Vehicles safe until Polaris can retrieve the Vehicles, and to order the Defendants to stop using Polaris trademarks on their website.

75. The public interest would be served by removing the Vehicles from the public highway since the unauthorized and illegal use of the Vehicles constitutes a public safety risk, the public interest would be served by the return of the Vehicles to their rightful owner, and the protection of trademarks also serves the public interest.

76. Polaris is willing and able to post bond as required by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Polaris Experience, LLC d/b/a Polaris Adventures prays that this Court:

A. Enter a temporary restraining order, preliminary and permanent injunction that:

   a. prohibits Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them, and all persons who receive actual notice of this preliminary injunction from using, operating, or renting the Vehicles;

   b. requires Defendants to permit Polaris to retrieve the Vehicles, or alternatively, order the seizure of the Vehicles until the lawsuit is resolved;

   c. requires Defendants to safely store and secure the Vehicles in their possession until they are returned to Polaris or seized;

   d. prohibits Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them, and all persons who receive actual notice of this preliminary injunction from using Polaris' trademarks; and

   e. prohibits the Defendants from proceeding with the auction of any of the Vehicles.

B. Award compensatory damages;

C. Award consequential damages;

D. Award unjust enrichment damages;

E. Award equitable damages;

F.  Award pre- and post-judgment interest, costs, and attorneys' fees; and

G.  Awarding such other and further relief as may be necessary and appropriate.

Dated: October 31, 2025                     */s/ Douglas R. Boettge*
                                            Douglas R. Boettge (#0237292)
                                            Madeline M Gustafson (#0402040)
                                            **STINSON LLP**
                                            50 South Sixth Street, Suite 2600
                                            Minneapolis, MN 55402
                                            Telephone: (612) 335-1500
                                            Facsimile: (612) 335-1657
                                            douglas.boettge@stinson.com
                                            madeline.gustafson@stinson.com

                                            *Attorneys for Polaris Experience, LLC*